**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**MUHAMMAD MUSTAFA-ALI**                                                          **PLAINTIFF**

**VS.**                                              **CIVIL ACTION NO. 2:03-cv-594-MTP**

**BARON IRVIN, ROBERT MINGO,
and LAURA STOGGNER**                                                          **DEFENDANTS**

**OPINION AND ORDER**

    Plaintiff Muhammad Mustafa-Ali brings this action pursuant to 42 U.S.C. § 1983 against

defendants Baron Irvin, Robert Mingo and Laura Stogner.[1]  The plaintiff, a pretrial detainee at the

time this action was filed,[2] is proceeding *pro se* and *in forma pauperis*.  In his complaint and

numerous amended complaints, plaintiff primarily alleges that he was conspired against by his

attorney, Baron Irvin, denied medical care by Warden Robert Mingo and Nurse Laura Stogner, and

that Mingo violated his constitutional right to the free exercise of his religion.[3]

    All remaining defendants have moved to the court for summary judgment.  On March 13,

---

    [1]Sometimes mistakenly referred to by the plaintiff as Laura "Stoggner."  A host of other claims and parties were previously dismissed at various times.  See orders [16], [92],[93].

    [2] He has since been released from custody.

    [3] The court conducted a screening or omnibus hearing in this matter on April 12, 2005, to allow the plaintiff to clarify his allegations pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Generally dissatisfied with his entire prison experience, plaintiff makes passing references and general allegations regarding numerous other aspects of prison life that he found disappointing.  Plaintiff alleges in his amended complaints that Mingo violated his constitutional rights by mixing state prisoners and pretrial detainees, denied him attorney visitation, housed him in a facility that permits smoking and is responsible for the loss of his sweatsuit.  While disputed, plaintiff identifies no constitutional deprivation or violation associated with these claims that would give rise to a claim under 42 U.S.C. § 1983.   However, the allegations regarding the denial of attorney visits and the lost sweatsuit are addressed summarily elsewhere in this opinion.

2007, Baron Irvin moved [98] the court to dismiss plaintiff's claims against him or, alternatively, for summary judgment.  On June 20, 2007, Robert Mingo and Laura Stogner also moved [113] for summary judgment.  The plaintiff did not file a timely response to either motion.

Because the motions, if granted, could result in a final dismissal of all remaining claims, the court afforded plaintiff an opportunity to file a response to the motions out of time.  By order [115] of July 6, 2007, the court directed plaintiff to file his responses to the motions by July 20, 2007.  Plaintiff did not file a response or any further pleadings, despite the gratuitous grant of additional time to do so.  Thus, this matter is now before the court on dispositive motions filed by all remaining defendants and for consideration or evaluation, *sua sponte*, pursuant to 28 U.S.C § 1915 (e)(2).

The court having reviewed the motions, the documents and authorities submitted,[4] and being fully advised in the premises, finds that the motions should be GRANTED and that the remainder of plaintiff's federal claims should be dismissed with prejudice.[5]  The court further finds more specifically as follows:

## FACTUAL AND PROCEDURAL SUMMARY

Muhammad Mustafa-Ali (hereinafter "Ali") filed his initial complaint on December 10, 2003, while he was a pretrial detainee at Marion Walthall Regional Correctional Facility (hereinafter "M.W.C.F."), alleging that he was being held without a preliminary hearing or bond and that several persons, including his attorney, Baron Irvin, had conspired to wrongly incarcerate him to avoid

---

[4]While plaintiff did not file a response in opposition to the motions, his complaint, his amended complaints, and his sworn testimony from the omnibus hearing held in this matter are considered herein.

[5] The parties having consented to disposition by the Magistrate Judge [83], the court is authorized to enter final judgment pursuant to Fed. R. Civ. P. 73 and local rule 73.1.

repaying a debt allegedly owed by Irvin.  Irvin, a private citizen, was the only defendant named in the initial complaint.

Ali amended his initial complaint on May 13, 2004, alleging that Warden Robert Mingo denied him medical care, required him to be housed in a facility in which smoking was permitted, took away personal property, denied him an attorney visit and prohibited his free expression or exercise of his religion.   In his amended complaints, Ali's allegations regarding the violation of his religious freedom include: he was forced to use an open toilet with no shower curtains; Warden Mingo allowed Christians religious materials, but denied Muslims such materials; he was denied a pork-free meal, as requested, to comply with Ramadan; he was denied access to a prayer rug; and he was told that a copy of the Qur'an could only be brought into the prison if the hard cover was torn off.

On September 20, 2004, Ali amended his complaint yet again adding Laura Stogner, a nurse at M.W.C.F., as a defendant, and alleging that M.W.C.F. had no place to put sick inmates, that M.W.C.F. would not take inmates to the doctor until they had "really gotten sick," and that there was no separation of inmates who had contracted staff infection.

Specifically, Ali states that on September 8, 2004, he complained that his leg was bleeding. He was examined by Nurse Stogner, who gave him gauze until he could see the doctor.  Nurse Stogner called the doctor around 4:30 p.m. that day, after examining Ali, and arranged for Ali to visit the doctor the next day.  Ali claims that on September 9, 2004, he was taken to the Columbia Family Medical Clinic where he was diagnosed with a staph infection.  The next day he was admitted to Marion County General Hospital (MCGH) where he underwent a surgical procedure to treat his

staph infection. Ali was released from the hospital and returned to the jail on September 13, 2004.[6]

Ali complains that Nurse Stogner denied him the requisite medical care needed, and that her allegedly deficient treatment of him was based on race.[7]  Finally, on March 31, 2005, Ali amended his complaint seeking monetary damages, depending on how one interprets it, in the amount of seven billion dollars ($7,000,000,000.00) or seven million dollars ($7,000,000.00).[8]

Plaintiff Ali was first arrested on October 7, 2003, on two counts of uttering forgery.  He was held as a pretrial detainee in the Marion Walthall Correctional Facility (M.W.C.F.).  On July 29, 2004, Ali made a sick call request complaining of fluid in his lungs and shingles.  Nurse Stogner examined Ali and found that his lung fields were clear, and he had no presentment of shingles.[9]

 On September 8, 2004, Nurse Stogner was called to examined an area of drainage on Ali's thigh.  Nurse Stogner diagnosed the problem as a staph infection, and made arrangements for an outside doctor to see Ali the next day at the Family Clinic in Columbia, Mississippi.  On September 9, 2004, a doctor at the Family Clinic treated Ali, gave him a prescription, and scheduled him for surgery to treat the infection.  On September 10, 2004, Ali was taken to the local hospital to prepare for surgery which was performed the following day.  On September 13, 2004, Ali was discharged from the hospital and taken back to M.W.C.F.[10]

Ali was kept in quarantine at M.W.C.F., under the observation of Nurse Stogner, until his

[6]Amended Complaint [15]; Stogner Affidavit [113-8].

[7]Amended Complaint [15].

[8]Amended Complaint [48].

[9]Motion [113-12].

[10]Motion [113-9], [113-11].

infection would not pose a risk to the other inmates.  On September 27 and October 5, 2004, Ali requested follow-up visits with the outside doctor.  On both occasions, Nurse Stogner contacted the doctor's office and was told that if the wound was healing, no follow-up visit was required.  The wound has since healed and there was no recurrence of the staff infection.[11]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

The court reviews the facts "drawing all inferences in the light most favorable to the nonmoving party." *Solomon v. Walgreen Co.*, 975 F.2d 1086, 1089 (5th Cir. 1992).  However, "[i]f the record taken as a whole . . . could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact to be resolved at trial." *Id.*  "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir 1994) is not enough to create a real controversy regarding material facts.  In the absence of proof, the court does not "assume that the nonmoving party could

---

[11]Omnibus Hearing Transcript [113-10], pp. 25, 26; Affidavit [113-9].

5

or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(emphasis omitted).

## ANALYSIS

Liability is imposed upon any person who, acting under color of state law, deprives another

of federally-protected rights under 42 U.S.C. § 1983.  Therefore, § 1983 affords a remedy to those

who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the

Constitution and laws of the United States.  However, section 1983 does not provide "a general

remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the

complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas,* 660

F.2d 680, 683 (5th Cir.1981).

### A.  Claims Against Baron Irvin

The plaintiff initially brought this action against only Baron Irvin.  In the complaint [1], filed

December 10, 2003, Ali claims that while Irvin was his attorney,[12] the plaintiff "let him borrow well

over $25,000.00."  The plaintiff also claims that he was "locked up...for uttering and forgery charges

taken out by Baron Irvin...because I refused to give him more money."  In an amended complaint [3],

Ali again charges that Irvin "went [and] took out uttering & forgery charges" but claims that Irvin's

reason for doing this was to "keep from paying me back."  The plaintiff further claims that "because

of his [Irvin's] underhanded tactis (way) I was arrested and brought to Marion County on October

8, 2003, and charged with uttering and forgery and kidnaping."

---

[12] Mustafa-Ali hired Irvin to do the legal work to have Mustafa-Ali appointed his uncle's conservator. Mustafa-Ali was arrested on charges of kidnaping his uncle at the same time he was arrested on the charges brought by Irvin, but he does not allege that Irvin caused the kidnaping charge to be brought.

Irvin was a private attorney who apparently was an alleged victim of some of the charges that formed the basis for Ali's confinement. "[S]ection 1983 claims require that the conduct complained of be done under color of law, and private attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983." *Mills v. Criminal District Court #3*, 837 F.2d 677, 679 (5th Cir. 1988)(*citing Nelson v. Stratton*, 469 F.2d 1155 (5th Cir. 1972), *cert. denied*, 410 U.S. 957 (1973). However, private individuals "who have conspired with state officials may be held liable under section 1983 even though the state officials with whom they conspire are themselves immune from suit." *Mills*, 837 F.2d at 679; *Richardson v. Fleming*, 651 F.2d 366, 371 (5th Cir. 1981).

For a conspiracy claim to survive even a motion to dismiss, something "more than a blanket of accusation" or conclusory allegations is required. *Arsenaux v. Roberts,* 726 F.2d 1022, 1024 (5th Cir. 1982) "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act. ... Mere conclusory allegations of conspiracy cannot, absent reference to material facts constitute grounds for § 1983 relief." *Dayse v. Schuldt,* 894 F.2d 170, 173 (5th Cir. 1990). Nowhere in any of the plaintiff's various complaints is there an allegation that Irvin agreed with anyone to commit an illegal act. Thus, on this basis alone, the plaintiff's conspiracy claim must fail. *See Dayse v. Schuldt,* 894 F.2d at 173; *see also Hunter v. City of Monroe,* 128 Fed. Appx. 374, 375 (5th Cir. 2005); *McCall v. Peters,* 108 Fed. Appx. 862, 863 (5th Cir. 2004).

Additionally, even if the plaintiff can be deemed to have alleged a conspiracy, the plaintiff has not shown that his arrest and detention entailed a violation of his *constitutional* rights. To state a cognizable section 1983 claim for conspiracy "it remains necessary to prove an actual deprivation

of a constitutional right; a conspiracy to deprive is insufficient." *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir. 1984).

At best, Ali claims that he was subjected to malicious prosecution by Irvin. Whether alleged against Irvin as the basis for the conspiracy claim or otherwise, "'malicious prosecution' standing alone is no violation of the United States Constitution." *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003); *see also Haggerty v. Texas Southern Univ.,* 391 F.3d 653, 658 (5th Cir. 2004) (applying the *Castellano* rule and ordering dismissal of section 1983 malicious prosecution claim). Because "[t]here is no longer a freestanding section 1983 claim for malicious prosecution in this circuit" any such claim against Irvin must fail. *See Figgs v. Vrazel,* 106 Fed. Appx. 260, 261 (5th Cir. 2004)(holding that institution of proceedings without probable cause did not state a claim and affirming dismissal of malicious prosecution claim); *see also Izen v. Catalina,* 398 F.3d at 367 (affirming summary judgment on malicious prosecution claim "because Izen's complaint [did] not state a claim under the Fourth Amendment directly..."); *Granger v. Slade,* 361 F. Supp. 2d 588, 593 & n. 2 (S.D. Miss. 2005) (citing *Castellano* and holding that "a claim against the City for malicious prosecution based on an allegation that the City initiated criminal proceedings...without probable cause does not state a claim."). If the plaintiff's constitutional rights have not been violated, "no basis exist[s] for assigning liability for conspiracy," making dismissal of the claim appropriate. *Gillum v. City of Kerrville,* 3 F.3d 117, 123 (5th Cir. 1993); *see also Villanueva v. McInnis,* 723 F.2d 414, 419 (5th Cir. 1984) (finding "failure to prove a constitutional deprivation dispositive" of conspiracy to- murder claim where no murder had occurred and reversing judgment in favor of the plaintiff).

**B.  Claims Against Mingo and Stogner**

1.  <u>Medical Claims</u>

Plaintiff alleges that he was denied adequate medical care while incarcerated.  As a pretrial

detainee, plaintiff's rights flow from the due process clause of the Fourteenth Amendment.  *Hare*

*v. City of Corinth, Miss.,* 74 F.3d 633, 639 (5th Cir.1996) (en banc).  The duty owed to pretrial

detainees under the Due Process Clause is measured under the subjective definition of deliberate

indifference.  *Hare,* at 648.  To prevail on a § 1983 claim against a jail official, a pretrial detainee

must show that the defendant "had subjective knowledge of a substantial risk of serious harm to a

pretrial detainee, but responded with deliberate indifference to that risk."  *Id.* at 650.

Under 42 U.S.C.§ 1983, and because of his status as a prisoner, the plaintiff's claim is not

governed by the general civil law regarding medical negligence.  The Constitution only prohibits

"[A]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs."  *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976).  It does not impose liability for simple

carelessness or inadvertent failure to provide appropriate medical care.  *Id.* at 105-9.

Deliberate indifference is an extremely high standard to meet.  It is indisputable that an

incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate

indifference.  *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir.1985).  Rather, the plaintiff must show

that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly,

or engaged in any similar conduct that would clearly evince a wanton disregard for any serious

medical needs."  *Id.*  "[F]ailure to alleviate a significant risk that [the official] should have perceived,

but did not" is insufficient to show deliberate indifference.  *Farmer v. Brennan,* 511 U.S. 825, 838

(1994).

9

Ali has failed to establish that either Nurse Stogner or Warden Mingo were deliberately indifferent to his medical needs.  Plaintiff complained of drainage on his thigh on September 8, 2004. Nurse Stogner made arrangements for Ali to be seen the very next day by an outside doctor, who prescribed medication for the wound and arranged for surgery to correct the problem.  The surgery was performed only two days later, and Ali was discharged on September 13, 2004.

Similarly, Ali's claims that his constitutional rights were violated – because M.W.C.F. failed to provide him a follow-up visit with the outside doctor and that the prison does not separate inmates with staph infections from those without – also fail.  Nurse Stogner contacted the doctor's office on both occasions that Ali requested a follow-up, showing an appropriate level of concern for Ali's treatment, and she was told that no follow-up was required if the wound was healing.[13]  Ali's claim that he was denied the follow-up visits does not amount to deliberate indifference.  Rather, he simply disagrees with the handling of his treatment.

As to the issue or quarantine, the record clearly shows that Ali was, in fact ,quarantined from the rest of the inmates following his surgery.  He was placed under Nurse Stogner's observation until his infection posed no risk to the other inmates.[14]

The court finds that the plaintiff has failed to show that Warden Mingo and Nurse Stogner – officials or employees of M.W.C.F. – were deliberately indifferent to his medical needs.  Plaintiff was taken to the hospital, given medication for the wound, surgery was performed on his staph infection, he was quarantined from the other inmates, and the wound has since healed.  There are no genuine issues of material fact to be decided on this issue and the defendants are entitled to summary

---

[13]Stogner affidavit [113-9].

[14]*Id.*

judgment as a matter of law.  Plaintiff has failed to make a prima facie case of deliberate indifference.

    2.  <u>Religion claims</u>

First, Ali claims that Warden Mingo violated his First Amendment rights by infringing on the free exercise of his religious expression.  Specifically, he asserts that Warden Mingo has placed a substantial burden on his Muslim faith by denying him a hardback copy of the Qur'an, a prayer rug, special toiletry and shower facilities, and a pork-free meal during the Muslim religious holiday of Ramadan.  These claims also fail as a matter of law.

Imprisonment necessarily entails a loss of numerous rights and liberties.  *Muhammad v. Lynaugh,* 966 F.2d 901, 902 (5th Cir.1992)**.**  "A prisoner is not free to do that which he might wish to do, nor may he do allowable things at a time and in a manner he might prefer." *Id.* at 902.  A prisoner's right to practice his religious beliefs does enjoy a measure of constitutional protection. *Id.*  However, restrictions on an inmate's religious practices are permitted when they are  reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley,* 482 U.S. 78, 89-90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)*; Odneal v. Dretke*, 435 F. Supp. 2d 608, 618 (S.D. Tex. 2006).

The court, in *Turner*, established a four-factor "rational relationship" test for analyzing the constitutionality of regulations that burden a prisoner's fundamental rights.  482 U.S. at 89-91, 107 S.Ct. 2254.  Under the *Turner* test, the court must consider: (1) whether there exists a valid, rational correlation between the prison regulation and the legitimate governmental interest advanced; (2) whether there are alternative means of exercising the rights that remain available to the inmates; (3) what is the impact on prison staff, other inmates, and the allocation of prison resources generally;

and (4) whether there is an absence of ready alternatives to the regulation in question.  *Id.*

The alleged restrictions are clearly rationally related to M.W.C.F.'s legitimate penological interests in the monitoring and safety of the prisoners and jail personnel, as well as providing proper nutritious meals to all the prisoners without undue cost.  *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007) (holding that prison officials failure to provide kosher meals did not violate inmates free exercise rights).

The Fifth Circuit has held that the first factor in the *Turner* test, whether there is a rational relationship between the regulation and the legitimate government interest advanced, is the controlling question, and the other factors merely help a court determine if the connection is logical. *Scott v. Miss. Dep't of Corr.,* 961 F.2d 77, 81 (5th Cir.1992) (commenting that neither *Turner* nor *O'Lone* require courts to weigh evenly, or even consider the other three factors).  As established by the affidavit of Robert Mingo,[15] no hard cover books may be possessed by inmates or pretrial detainees as a matter of jail policy and procedure.  The safety considerations behind allowing only soft-cover books is self-evident.  Moreover, according to his own testimony at the *Spears* hearing, Ali was allowed a prayer rug, but refused it.[16]

Likewise, the safety policy behind open toilet and shower facilities is evident and must trump Ali's desires for closed facilities. The defendants having provided competent evidence that the plaintiff was afforded reasonable accommodation and opportunity to practice his faith.  Ali's fails to create any genuine issues of material fact with respect to his free-exercise claims.

[15]Docket no. [113-8].

[16]Transcript, [113-10], p. 19.

12

Second, Ali alleges his Equal Protection rights were violated under the Fourteenth Amendment with respect to his religion claims.  However, "[t]o succeed on his equal protection claim, [plaintiff] must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated."  *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) (*citing McCleskey v. Kemp*, 481 U.S. 279 (1987)).  The Fourteenth Amendment requires that all persons similarly situated shall be treated alike, but it does not demand "that every religious sect or group within a prison-however few in numbers-must have identical facilities or personnel."*Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)**.** Prison administrators must provide inmates with "reasonable opportunities ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments."  *Id.*  at 322 n. 2, 92 S.Ct. 1079.

Clearly, the plaintiff has not been denied equal protection.  As noted previously, jail policy prohibits hardcover books.  That limitation applies to everyone, not just Ali.  Further, the inmates are not provided every accouterment for the practice of their religion, permitted to choose their own menus, or allowed access to enclosed bathroom or shower curtains.  Ali is no exception.

Moreover, none of these restrictions place a substantial burden on Ali's ability to freely exercise his Muslim faith, especially where Ali would have been allowed both a prayer rug and a copy of the Qur'an, if he had been willing to have one without a hard cover.[17]

Ali's equal protection claim is without merit and lacks sufficient factual support.  Accordingly, it will be dismissed.

3.  Loss of Sweatsuit

Ali claims that Mingo took a sweatsuit from him, an allegation Mingo denies.  Nevertheless,

---

[17]Transcript [113-10], p. 19.

the allegation does rise to a constitutional level.   It is well settled that intentional deprivations of

property by state officials do not violate the due process clause of the Fourteenth Amendment if

adequate post-deprivation remedies exist.  *Hudson v. Palmer*, 468 U.S. 517 (1984).  The same is true

of negligent deprivations.  *Daniels v. Williams*, 474 U.S. 327 (1986).  State laws may provide an

adequate post-deprivation remedy.  *Hudson*, 468 U.S. 517; *Marshall v. Norwood*, 741 F. 2d. 761 (5th

Cir. 1984).

The State of Mississippi provides a least three-post seizure remedies, including actions for

conversion, claim and delivery, and replevin, any of which plaintiff could use to recover the property

he insists was wrongfully taken.  The Fifth Circuit has held that "Mississippi's post-deprivation

remedies for civil IFP litigants satisfy due process." *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir.

1994).  As state law provides an adequate remedy, no due process violation exists with respect to the

alleged deprivation of the sweatsuit – or other property – alleged to have been taken from the

plaintiff.

4.  Attorney Visits

Ali further summarily alleges that at some point he was denied a visit or visits with his

attorney.[18]  Once again, while this allegation is disputed, Ali makes no showing of actual injury as

a result of the alleged denial(s).  A prisoner's constitutional rights are violated only when prison

officials interfere with his access to the courts and his is prejudiced by the interference.  *Lewis v.

Casey*, 518 U.S. 343 (1996).  Plaintiff has not established - much less alleged - that he was unable

to pursue a legal claim or was otherwise prejudiced as a result of any denial of legal assistance or

---

[18]In one of his numerous amended complaints Ali alleges that Mingo "denied attorney
visit on several occasions." Amended Complaint [9], p.5.

access to his attorney.  Accordingly, this claim fails as a matter of law.  *See id.* at 349-51*; see also Donnelly v. Edwards*, 95 Fed. Appx. 702, 703 (5th Cir. 2004) (upholding dismissal of access-to-the-courts claim because plaintiff did not establish that he was unable to proceed in a court case as a result of alleged delays and denials of legal assistance) ; *Cartner v. Lowndes Cty.*, 89 Fed. Appx. 439, 442 (5th Cir. 2004), *cert. denied*, 542 U.S. 923 (2004)  (affirming dismissal of access-to-the-courts claim where plaintiff failed to explain "how his position as a litigant was adversely affected.").

Plaintiff having failed to establish genuine issues of material fact and otherwise having failed to state claims upon which relief may be granted, despite having been provided numerous opportunities to amend his pleadings, final dismissal of his remaining claims is appropriate.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Defendants' Motions for Summary Judgment [98, 113] should be, and hereby are, GRANTED.  Plaintiff's claims against these remaining defendants under 42 U.S.C. § 1983 are dismissed with prejudice.  Plaintiff's claims under state law are dismissed without prejudice.[19]  A separate judgment shall be entered herein in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED AND ADJUDGED this the 8th day of August, 2007.

s/ Michael T. Parker
United States Magistrate Judge

---

[19]28 U.S.C § 1367 (c) allows the court to decline to exercise supplemental jurisdiction over other claims "when it has dismissed all claims over which it has original jurisdiction."